## KENNEDY REALTY CO., Inc., et al. v. BILLINGS.

### No. 480.

Municipal Court of Appeals for the District of Columbia.

April 11, 1947.

Harold L. Schilz, of Washington, D. C., for appellants.

J. George Gately and James J. Gorman, Jr., both of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

John R. Billings sued Kennedy Realty Co., Inc., and Herman O. Chesser for $75, alleged to be due him for services rendered in connection with the sale of certain real estate. The Realty Company and Chesser denied owing Billings any money and filed a counterclaim for $460 alleged to have been "wrongfully obtained" by him in connection with the sale of certain other real estate. The trial court found in favor of Billings both on his claim and on the counterclaim.

The evidence disclosed that for the first five months of 1946 Billings and Chesser jointly owned Kennedy Realty Co., which they conducted as a real estate business. On May 29 Billings signed an agreement by which he "relinquished" to Chesser all his "rights, title and interest" in the Realty Company, with two exceptions not here material. Thereafter Billings engaged in the real estate business on his own account.[1]

According to Billings' claim, in June 1946 he was engaged by Chesser to assist in the sale of certain property and was to be paid $75 on completion of the sale; the work was performed and the sale made; but he had not been paid the agreed compensation. Chesser admitted the services of Billings and the completion of the sale but denied any agreement to pay Billings, and testified the agreement was that Billings would look to another broker, who shared the commission, for his compensation. This testimony presented a question of fact depending largely on the credibility of the witnesses, and the trial court's finding in Billings' favor must stand.

[1] In both the original claim and the counterclaim, in the trial, and in the briefs here, Chesser and the Realty Company were apparently treated as one and the same legal entity. We therefore do not attempt to treat them separately.

With respect to the counterclaim, the evidence was that on April 30 a Mrs. Cruitt listed certain property for sale with Kennedy Realty Co., which listing provided: "This is exclusive until sold"; that no sale of this property had been effected at the time Billings sold his interest in the Realty Company to Chesser and the listing card remained in the files of the Realty Company; that on June 28 Billings, as broker, negotiated a contract for the sale of the Cruitt property which contract was settled on August 22 and Billings received a commission of $460; and that either in June or August Billings, without Chesser's knowledge, removed from the files of Kennedy Realty Co. the Cruitt listing card and thereafter destroyed it. It is the contention of Chesser that Billings "wrongfully obtained" the commission on the Cruitt sale and that he (Chesser) is entitled to recover it from Billings.

■ Chesser argues that Billings' admission that he removed and later destroyed the Cruitt listing card weighed against Billings' credibility and lessened the merits of his case. Assuming the correctness of this contention, the credibility of the witnesses and the weight of the evidence were matters for the trial court who is presumed to have given due consideration to all of the evidence. In the same connection, Chesser contends that because of the destruction of the listing card, Billings came into court with unclean hands. Assuming, without holding, that the equitable doctrine of "clean hands" has any application to a case of this sort, the answer is that Billings came into court on his own claim which was in nowise connected with the Cruitt sale. If his hands were not clean, they were dirtied in connection with the counterclaim in which he was defending and not seeking relief. As far as it affected his credibility, again we must presume that the trial court gave full consideration to this feature of the case.

Coming to the merits of the counterclaim, it is the contention of Chesser that he (or the Realty Company) had an exclusive listing of the Cruitt property and that Billings, with full knowledge of this, violated Chesser's rights by making sale of the Cruitt property and collecting a commission thereon, and that Billings is accountable for the commission so collected.[2]

■ The trial court was of the opinion that the listing was a nullity because not signed by Mr. Cruitt, one of the owners of the property. Neither Mr. Cruitt nor Mrs. Cruitt testified and, in the absence of any testimony as to whether Mrs. Cruitt in listing the property acted for herself alone or also with authority from her husband, we feel it is unnecessary to decide this question or the question of the meaning or effectiveness of the phrase "exclusive until sold." Even if the listing was a valid and subsisting exclusive listing at the time that Billings negotiated the sale, we see no basis for recovery of the commission by Chesser from Billings. If an owner gives a broker an exclusive listing and then sells through another broker, the owner may be liable for a commission to the first broker, but we find no authority for holding that the selling broker must surrender his commission to the broker with the exclusive listing. Billings alone procured a purchaser for the Cruitt property and thereby earned a commission. In the absence of any agreement, there was no legal liability on Billings' part to account to Chesser for the commission or any part of it. The listing with Chesser by Mrs. Cruitt imposed no liability on Billings and the agreement of May 29th between Billings and Chesser imposed no liability on Billings with respect to commissions earned by him thereafter. Whatever may be Chesser's rights against Mrs. Cruitt, we see none against Billings. If it is Chesser's theory that Billings and the Cruitts fraudulently conspired to interfere with Chesser's rights under the listing, there was no proof of such charge.

Other assignments of error have been considered and found to be without merit.

Affirmed.

---

[2] While this is the theory on which the counterclaim was filed and the case argued here, Chesser testified that he learned that Billings was attempting to sell the Cruitt property and consented to such efforts on the condition, agreed to by Billings, that the commission would be equally divided. The trial court evidently did not accept this testimony as true.